IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**HENRY SANTINAC, on behalf of himself
and those similarly situated**                                        **PLAINTIFF**

**v.**                                                                    **CAUSE NO. 1:15CV25-LG-RHW**

**WORLDWIDE LABOR SUPPORT OF
ILLINOIS, INC., a Mississippi Limited
Liability Company, and WAYNE A. COOK, JR.**             **DEFENDANTS**

## ORDER APPROVING SETTLEMENT, AS MODIFIED BY THE COURT, AND DISMISSING CLAIMS WITH PREJUDICE

BEFORE THE COURT are the [80] Joint Motion for Approval of Settlement and to Dismiss Claims with Prejudice and the [83] Supplemental Joint Motion filed by the parties to this Fair Labor Standards Act (FLSA) case. The Court twice ordered Plaintiffs' counsel to submit additional information to allow the Court to evaluate the settlement, and in particular the request for approval of attorneys' fees and costs therein. Having now reviewed the Motions, the initial and supplemental briefing, including the additional information provided by Plaintiffs' counsel, the record in this matter, and the applicable law, the Court is of the opinion that the settlement should be approved, with the adjustment to attorneys' fees discussed herein, in the total amount of $262,514.86. As a result, this action will be dismissed with prejudice.

### BACKGROUND

The FLSA requires covered employers to compensate nonexempt employees at overtime rates when they work in excess of forty hours per week. *See* 29 U.S.C. §

207(a).  Under certain circumstances, the FLSA permits an employee to bring suit against an employer "for and on behalf of himself . . . and other employees similarly situated."  29 U.S.C. § 216(b).  Plaintiff Henry Santinac instituted this action in 2015, claiming that Defendant Worldwide Labor Support of Illinois, Inc., violated the FLSA.

According to the allegations of the Complaint, Worldwide is "a privately held corporation [that] supplies a variety of skilled craftsmen to support ongoing projects in" various states.  (Compl. 3-4 (¶11), ECF No. 1).  "In particular, Worldwide subcontracts with various shipyards and other marine and industrial companies to provide the services of structural welders, shipfitters, pipe welders, pipefitters, electricians, and outside machinists."  (*Id.*).  Defendant Wayne Cook is the president of Worldwide.

Santinac alleged that when he was employed by Worldwide, he regularly worked over forty hours a week, but did not receive adequate overtime pay based on Worldwide's mischaracterization of a portion of his regular wages as "per diem."  He further alleged that all employees were subject to this improper per diem scheme to reduce overtime compensation.

On June 2, 2015, the Court conditionally certified this lawsuit as a collective action.  Since then, approximately 100 individuals have elected to opt-in.  *See Harris v. Hinds Cty.*, No. 3:12-cv-00542-CWR-LRA, 2014 WL 457913, at *1 (S.D. Miss. Feb. 4, 2014) ("Plaintiffs who desire to join in a 'collective action' must 'opt in' to the case and be bound by a judgment, unlike plaintiffs in a [Federal Rule of Civil

Procedure 23] class action, who must essentially 'opt out.'"). The parties have informed the Court that they have reached a settlement agreement and now seek approval of the settlement. *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982).

## DISCUSSION

### I. Request for Approval of Settlement

The Court should approve the settlement if it "reflect[s] a reasonable compromise over issues . . . that are actually in dispute." *See Lynn's Food Stores*, 679 F.3d at 1354. "The requirement of an adversarial posture between parties to a settlement agreement operates as a guarantee that employers cannot profit by coercing employees into waiving their rights, and then dressing that invalid waiver of the FLSA's protections as a valid settlement of a legal claim." *Sims v. Housing Auth. City of El Paso*, No. EP-10-CV-109-PKC, 2011 WL 3862194, at *6 (W.D. Tex. Sept. 1, 2011).

The Court is satisfied that a bona fide dispute exists between the parties. "Having found a bona fide dispute, the Court looks to whether the proposed settlement agreement is fair and reasonable." *Dyson v. Stuart Petroleum Testers, Inc.*, No. 1-15-CV-282 RP, 2016 WL 815355, at *2 (W.D. Tex. Feb. 29, 2016). "Although the class-action provisions of Federal Rule of Civil Procedure 23 technically do not apply to collective actions under the FLSA, Rule 23(e) is similar because it requires court approval to finalize a proposed class action settlement."

*Id.* As a result, courts often utilize the Rule 23(e) standard to determine whether a FLSA collective action settlement is fair and reasonable. *See id.*

> There are six focal facets [under Rule 23(e)]: (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen'l Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983).

The first factor requires the Court to consider the existence of fraud or collusion behind the settlement. "In the absence of evidence to the contrary, the court may presume that no fraud or collusion occurred between counsel. There is no evidence of such here." *See Lackey v. SDT Waste & Debris Servs., LLC*, No. 11-1087, 2014 WL 4809535, at *2 (E.D. La. Sept. 26, 2014). Rather, the parties participated in discovery and a lengthy settlement conference with United States Magistrate Judge Robert H. Walker before entering into the settlement agreement. *See id.* This factor weighs in favor of approval of the settlement.

As for the second factor, "[w]hen the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 651 (N.D. Tex. 2010) (quoting *Ayers v. Thompson*, 358 F.3d 356, 373 (5th Cir. 2004)). Defendants have represented that they intended to file a motion seeking to decertify this action. Even if that motion failed, the trial in this

4

case was expected to last "multiple days with the possibility that it could run longer depending upon the need for and length of expert testimony." (Joint Mem. 7, ECF No. 81). The parties also recognize the likelihood of lengthy post-trial practice, including an appeal. (*See id.*). The Court agrees with the parties that further litigation of this matter would have been costly and protracted. These considerations support a finding that the settlement is fair and reasonable.

The goal of the third factor – the stage of the proceedings and the amount of discovery – is to "evaluate[] whether 'the parties and the district court possess ample information with which to evaluate the merits of the competing positions.'" *Klein*, 705 F. Supp. 2d at 653 (quoting *Ayers*, 358 F.3d at 369). The parties have represented to the Court that they "have engaged in extensive discovery[,]" (Joint Mem. 2, ECF No. 81), including exchanging relevant documents and conducting "multiple informal depositions of both the individual Defendant and Defendants' bookkeeper." (Supp. Joint Mem. 4, ECF No. 84). Thus, the parties have had the opportunity to evaluate the merits of their respective positions, and this factor favors approval of the settlement.

The fourth factor, which is the most important factor absent fraud and collusion, considers the probability of the plaintiffs' success on the merits. *See Parker v. Anderson*, 667 F.2d 1204, 1209 (5th Cir. 1982). When analyzing this factor, the Court must judge the terms of the proposed settlement against the probability that the class will succeed in obtaining a judgment following a trial on the merits. *See Reed*, 703 F.2d at 172. The Court "must not try the case in the

settlement hearings because the very purpose of the compromise is to avoid the delay and expense of such a trial." *Id.* Here, both liability and damages have been and are strenuously disputed, and the parties have detailed numerous issues that would have remained for resolution at trial. (*See* Joint Mem. 8, ECF No. 84). There is also the possibility that the Court could decertify the class even before a trial. As a result, the Court finds that this factor supports a finding that the settlement is fair and reasonable.

The fifth factor examines the range of possible recovery by the class, and primarily concerns the adequacy of the proposed settlement. *See Ayers*, 358 F.3d at 370. The parties submit that "even assuming Plaintiffs correctly calculated their potential damages–which Defendants contest–each Plaintiff is receiving 100% of the overtime he or she could possibly be owed, even after attorneys' fees and costs are deducted, under the settlement." (Joint Mem. 3, ECF No. 84). The Court finds that this factor weighs in favor of approving the settlement.

The sixth factor is the opinions of class counsel and the class representatives. The parties and their attorneys agree that the settlement is a fair and reasonable resolution of a bona fide dispute. Therefore, this factor also supports a finding in favor of approving the settlement. Accordingly, after considering all of the *Reed* factors, the Court finds that the settlement should be approved.

## II.     Request for Approval of Attorneys' Fees

"[T]o fully discharge its duty to review and approve class action settlement agreements, a district court must assess the reasonableness of the attorneys' fees."

*Strong v. BellSouth Telecomm., Inc.*, 137 F.3d 844, 849 (5th Cir. 1998). In common fund cases such as this one, courts in the Fifth Circuit are permitted to use either the percentage method or the lodestar method to calculate attorneys' fees. *Union Asset Mgmt. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012). After utilizing the percentage method, it is often helpful to perform a lodestar cross-check. *See, e.g., In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1086 (S.D. Tex. 2012); *Klein*, 704 F. Supp. 2d at 675. The purpose of this cross-check "is to verify the reasonableness of the award calculated under the percentage method, to avoid both over- and under-compensation." *See In re Heartland*, 851 F. Supp. 2d at 1086.

### A.   Percentage method

Pursuant to the percentage method, the Court awards a reasonable percentage of the common fund to the attorneys. *Dell, Inc.*, 669 F.3d at 642-43. The Court first determines the actual monetary value conferred to the class by the settlement. *In re Heartland*, 851 F. Supp. 2d at 1075.

> If an agreement is reached on the amount of a settlement fund and a separate amount for attorney fees and expenses, . . . the sum of the two amounts ordinarily should be treated as a settlement fund for the benefit of the class, with the agreed-on fee amount constituting the upper limit on the fees that can be awarded to counsel.

*Id.* at 1072 (quoting Manual for Complex Litig. (4th) § 21.7 (2004)). After determining the value conferred on the class, the Court applies a benchmark percentage to this value. *Id.* at 1075.

The value conferred to the class in the present settlement is $275,000.00. The fees requested total $95,377.64, or approximately 34.68 percent of the value conferred to the class.[1] This percentage is somewhat higher than the amount of fees typically awarded in similar cases. *See, e.g.*, *Rodriguez v. Stage 3 Separation, LLC*, No. 5:14-cv-00603-RP, 2015 WL 12866212, at *5 (W.D. Tex. Dec. 23, 2015) ("A review of Fifth Circuit precedent suggests a benchmark fee of 30%."); Manual for Complex Litig. (4th) § 21.7 (2004) ("Attorney fees awarded under the percentage method are often between 25% and 30% of the fund."). The Court finds it necessary to perform a lodestar cross-check, which includes application of the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), to determine whether the requested award is reasonable.

B.   **Lodestar cross-check**

The lodestar cross-check involves calculation of the lodestar, as well as consideration of the *Johnson* factors. *See Strong*, 137 F.3d at 850. The Court first multiplies the reasonable number of hours spent working on the case by the reasonable hourly rate for the attorney(s) to determine the lodestar figure. *See Black v. SettlePou, P.C.*, 732 F.3d 492, 502 (5th Cir. 2013). After doing so, the Court "may enhance or decrease the amount of attorney's fees based on the relative weights of the twelve" *Johnson* factors. *See id.* (citation and quotation marks omitted).

---

[1] The Court addresses the requested costs separately below.

**1. Hours expended**

"The party seeking attorneys' fees must present an adequately documented time record to the court. Using this time as a benchmark, the court should exclude all time that is excessive, duplicative, or inadequately documented." *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). "The hours surviving this vetting process are those reasonably expended on the litigation." *Id.* The party seeking fees must demonstrate that the hours billed were reasonable and that the lawyers exercised billing judgment by writing off unproductive, excessive, or redundant work. *Black*, 732 F.3d at 502.

The three attorneys who worked on this case have represented that they billed a total of 361.57 hours, with no indication that any billing judgment was exercised. By way of example only, one attorney has a time entry of 8.3 hours expended for "Preparation of Notice and envelopes to be mailed out to all potential class members - stamped and mailed out same." There are similar entries related to locating addresses and mailing, all of which the Court finds was secretarial work that is not due to be compensated as attorney time. The time records also reflect duplicative work among the three attorneys working on this matter, which the Court also finds should not be compensated.

After reviewing the time records submitted, the Court finds that at a minimum 30 hours of the 361.57 hours[2] qualifies as redundant, excessive, or

---

[2] This is significantly higher than the 250 hours previously represented to the Court.

unproductive time.  The Court will therefore reduce the hours expended by that amount, for a total 331.57 hours to be utilized in calculating the lodestar.  The Court notes for Plaintiffs' counsel that the disallowed hours do not include the time spent in calculating damages, which time the Court finds to be reasonable.

**2. Hourly rate**

"[T]he relevant market for purposes of determining the prevailing rate to be paid in a fee award is the community in which the district court sits."  *Tollett v. City of Kemah*, 285 F.3d 357, 368 (5th Cir. 2002).  "Generally, the reasonable hourly rate for a particular community is established through affidavits of other attorneys practicing there."  *Id.*  Despite two Orders from the Court, no such affidavits have been provided here.

Lacking such affidavit evidence, the Court has formed its own independent judgment as to this issue.  *See Winget v. Corp. Green, LLC*, No. 09-0229, 2011 WL 2173840, at *6 (M.D. La. May 31, 20110 ("a district court is itself an expert on the issue of fees and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses as to value") (citation and quotation marks omitted).  In the Court's opinion, and taking into account the nature of this action and the reputation and experience of the lawyers involved, $250.00 is an appropriate rate for the work performed by each of the three attorneys in this action.  Applying this rate to the 331.57 hours discussed above yields a lodestar of $82,892.50.

### 3. *Johnson* factors

The Court must next analyze the *Johnson* factors, which are:

(1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases.

*Johnson*, 488 F.2d at 717-19.  The Court "must be careful, however, not to double count a *Johnson* factor already considered in calculating the lodestar when it determines the necessary adjustments." *Shipes v. Trinity Indus.*, 987 F.2d 311, 320 (5th Cir. 1993).

"The lodestar . . . is presumptively reasonable and should be modified only in exceptional cases." *Watkins*, 7 F.3d at 457.  The Court will "not enhance the lodestar unless [Plaintiffs have] show[n] that enhancement is *necessary* to make the award of attorneys' fees reasonable." *See id.* at 459 (emphasis in original).

Here, the Court has already considered the time and labor required (first factor), the customary fee (fifth factor), the experience, reputation, and ability of the attorneys (ninth factor), and awards in similar cases (twelfth factor) in its analyses above.  The second, third, and seventh factors – the novelty and difficulty of the questions involved, the skill required, and time limitations – are at most neutral factors.  The eleventh factor – the nature and length of the professional relationship

11

with the client – has not been addressed and otherwise has no bearing on the fee award in this case.

Considering the fourth factor, there is affidavit evidence that the attorneys were precluded from handling other cases as a result of this case. However, the Court does not find that this was an undesirable case (eleventh factor) for attorneys who have opined that they regularly handle such matters. As for the eighth factor, the amount involved was relatively low for such cases, although the result obtained was highly favorable for the opt-in plaintiffs. Nevertheless, the Court is unpersuaded that this is an exceptional case compelling modification of the lodestar based on these or any other *Johnson* factor. *See Watkins*, 7 F.3d at 457, 459.

Finally, turning to the sixth factor on which Plaintiffs' counsel most relies, the fee is contingent in that the plaintiffs (or at least Plaintiff Santinac) agreed to pay forty percent of the gross recovery to their attorneys. Counsel argues that the contingent nature of this case justifies a multiplier of at least 2, but contingency alone, without more, is insufficient for this Court to approve such an enhancement. *See, e.g.*, *Shirley v. Chrysler First, Inc.*, 763 F. Supp. 856, 860 (N.D. Miss. 1991). Even so, a multiplier is not "warranted if the lodestar adequately compensates the attorneys for their services." *See Turner v. Murphy Oil USA, Inc.*, 472 F. Supp. 2d 830, 869 (E.D. La. 2007).

Here, after consideration of the *Johnson* factors, the Court is of the opinion that the lodestar of $82,892.50 is adequate, and that adjustment of the lodestar is unnecessary to make the fee award reasonable. *See Watkins*, 7 F.3d at 457, 459.

Applying the lodestar cross-check, the Court finds that the fees requested would result in overcompensation. Thus, the Court will reduce the fee award to equal the lodestar amount of $82,892.50, which still represents more than 30% of the common fund and is therefore on the upper end of fees awarded in similar cases.

### III. Request for Approval of Expenses

Plaintiffs seek payment of $3,801.96 in expenses incurred by their attorneys. The law firm of Morgan & Morgan has submitted a case expense report listing expenses in the amount of $4,016.71 and the law firm of Lococo & Lococo has submitted an expense report in the amount of $405.00. Counsel has not offered any explanation for the discrepancy between the reports and the expenses requested. Having reviewed the expense reports, the Court finds that the $3,801.96 in requested expenses were reasonably incurred in this litigation, and will approve total expenses in that amount.

### CONCLUSION

The proposed settlement award to the opt-in plaintiffs is approved as fair, reasonable, and adequate. Attorneys' fees are awarded in the amount of $82,892.50. Costs are awarded in the amount of $3,801.96.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [80] Joint Motion for Approval of Settlement and to Dismiss Claims with Prejudice and the [83] Supplemental Joint Motion filed by the parties are **GRANTED IN PART AND DENIED IN PART**. The Motions are granted in all respects, except the request for attorney's fees, which is reduced as discussed herein. The Court **APPROVES**

settlement of this FLSA action in the amount of $262,514.86 as follows: $175,820.40 to the opt-in plaintiffs to be allocated among them as agreed by the parties on Exhibit A to the Release and Settlement Agreement previously submitted to the Court, $82,892.50 in attorneys' fees, and $3,801.96 in costs.

**IT IS FURTHER ORDERED AND ADJUDGED** that this action is **DISMISSED WITH PREJUDICE**. A separate Final Judgment will be entered.

**SO ORDERED AND ADJUDGED** this the 23rd day of March, 2017.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE